LOUISIANA CHEMICAL ASSOCIATION

v.

Eula BINGHAM, Occupational Safety and Health Administration, and Ray Marshall.

Columbus P. MILLET, Jr.

v.

Eula BINGHAM, Asst. Secy. of OSHA and Ray Marshall, Secy. of Labor.

Ronald P. CHAUFFE

v.

Eula BINGHAM, Asst. Secy. of OSHA and Ray Marshall, Secy. of Labor.

Harry J. SMITH

v.

Eula BINGHAM, Asst. Secy. of OSHA and Ray Marshall, Secy. of Labor.

Civ. A. Nos. 801178, 801201, 801200 and 801199.

United States District Court, W. D. Louisiana, Lake Charles Division.

Aug. 29, 1980.

Horace A. Thompson, III, McCalla, Thompson, Pyburn & Ridley, New Orleans, La., Robert V. Zener, Richard B. Herzog, Donald R. Crowell, II and Arthur W. Adelberg, Pepper, Hamilton & Scheetz, Stephen A. Bokat, National Chamber Litigation Center, Inc., Washington, D. C., for plaintiffs, La. Chemical Assoc.

James E. White, Regional Sol., Dallas, Tex., Nathaniel I. Spiller, U. S. Dept. of Labor, Diane E. Burkley, U. S. Dept. of Labor, Washington, D. C., for defendants.

Dennis K. Kade, for Court Standards Litigation, Washington, D. C.

## OPINION

VERON, District Judge.

This action involves a challenge to a rule promulgated on May 23, 1980 by the Occupational Safety and Health Administration (OSHA) pursuant to the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq.[1] The rule entitled "Access to Employee Exposure and Medical Records" has been published at 45 Fed.Reg. 35212 and is proposed as a new Part 1910.20 to Title 29 of the Code of Federal Regulation.

Plaintiffs include Louisiana Chemical Association ("LCA"), a Louisiana corporation which represents 58 chemical companies doing business throughout the State of Louisiana with facilities in this district and division, and three individuals working in facilities located in this district and division. Joining these plaintiffs is a physician who has intervened pursuant to Rule 24(a), Intervention of Right, of the Federal Rules of Civil Procedure. All claim that they will be adversely affected by this rule and that the rule exceeds several statutory and constitutional restraints upon the authority of OSHA. Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, plaintiffs moved the court to grant a preliminary injunction barring enforcement of 1910.20. A hearing upon this motion was held on August 18, 1980.

The threshold question presented by this case is whether or not this court has jurisdiction over the subject matter of the controversy. The question turns on whether the rule in issue may be properly characterized as a "standard." Under Section 3(8) of the Occupational Safety and Health Act an occupational safety and health standard is defined as:

A standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment.

The procedure for the promulgation, modification or revocation of standards is outlined in Section 6(b). Section 6(f) provides that pre—enforcement judicial review of a standard may be sought by a party potentially adversely affected by a standard only "with the United States Court of Appeals

---

1. When made in the body of the opinion, references to various sections of the Act will be according to how those sections were numbered in the original Act of Congress. For purposes of cross reference between the Act as referred to and as codified the following key is provided:

| | |
|---|---|
| Section 3 | 29 U.S.C. § 652 |
| Section 6 | 29 U.S.C. § 655 |
| Section 8 | 29 U.S.C. § 657 |

for the circuit wherein such person resides or has his principal place of business . . ." Thus if the rule in issue is a standard this court may not properly exercise jurisdiction over this case.

The Occupational Safety and Health Act extends to the Secretary of Labor authority to promulgate rules and regulations other than standards.[2] The act is silent as to the proper forum wherein judicial review of such administrative action may be sought.[3] As a consequence judicial review of such actions is governed by relevant provisions of the Administrative Procedure Act. 5 U.S.C. § 553 et seq. Under the Administrative Procedure Act, the court would have to determine whether some independent jurisdictional basis existed which would enable it to entertain this suit.[4] Such a determination however, awaits the court's preliminary characterization of the rule in question.

■ The preamble to the rule[5] challenged by the plaintiffs repeatedly characterizes the rule as a standard promulgated under the authority of section 6(b).[6] If simply calling a rule a standard made it so, OSHA has provided the court with ample justification for refraining from entertaining this suit.[7] However, the court is of the opinion that the designation given to a particular rule should most properly be derived from a judicial determination that the disputed rule shares the attributes of the statutory classification into which the rule is claimed to fall. In the present case, this determination requires the court to examine the rule in issue and decide whether it possesses the attributes of a standard as defined in Section 3(8). Since the characterization of the rule presents only a question of statutory interpretation relating to the jurisdiction of this court the conclusion expressed by the preamble will be given proper deference but will not be dispositive of the issue. *Zuber v. Allen*, 396 U.S. 168, 193, 90 S.Ct. 314, 328, 24 L.Ed.2d 345 (1969); *Texas Gas Corp. v. Shell Oil Co.*, 363 U.S. 263, 270, 80 S.Ct. 1122, 1126, 4 L.Ed.2d 1208 (1960).

As explained in the preamble, the essence of this rule would appear to be that employers in a vast number of industries will be required to assure the preservation of certain employee medical records pertinent to an employee's actual or potential on the job exposure to any one of an ever–expanding

2. E. g., Section 8(C)(1)–(3) (authorizing the promulgation of regulations requiring employers to make and preserve various kinds of records), Section 8(e) (concerning regulations governing inspection of work sites) and Section 8(g)(2) (a general rulemaking provision authorizing such rules as the Secretary of Labor deems "necessary to carry out his responsibilities under the Act"). Since the singular issue implicated in the determination of this court's jurisdiction is whether the rule in issue is a standard, any consideration of the power of OSHA to issue this rule pursuant to the above mentioned sections must be deferred until the jurisdictional issue is resolved.

3. The Act does specifically provide for review in the district courts of two actions: (1) when the secretary charges an employer with discriminating against an employee for exercising his rights under the Act; 29 U.S.C. § 660(c)(2); and (2) when the Secretary seeks an injunction against conditions or practices in any place of employment which present an imminent danger of death or serious physical harm. 29 U.S.C. § 662(a)(b).. Although these sections specify district court jurisdiction in the matters referred to, they ought not be read to preclude district court jurisdiction over matters neither referred to nor directed to another forum. *See, Stark v. Wickard*, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967).

4. 5 U.S.C. § 703 states that:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute, or, in the absence or inadequacy thereof, any applicable form of legal action including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus in a court of competent jurisdiction.

5. The preamble appears at 45 Fed.Reg. 35212–35277. The text of the rule appears at 35277.

6. *See,* e. g. 45 Fed.Reg. 35243–44 (Legal Authority Issue). *See* also 45 Fed.Reg. 35212 (Summary and Introduction).

7. *See,* e. g. Defendants' Opposition to Plaintiffs' Motions for Preliminary Injunction at 23: "In sum, the records access standard looks like a standard; it acts like a standard . . . .."

number of toxic substances and dangerous conditions. Employers falling within the scope of the rule will be required to preserve the records for the duration of the employee's employment and for thirty years after the employment has terminated. Throughout this time the employer must assure access to these records by the employee, fellow employees exposed or potentially exposed to similar job hazards, designated employee representatives, and to OSHA officials.[8]

The obvious purpose of the rule is to establish an extremely comprehensive monitoring system which will in time provide a wealth of information relevant to the general purpose of the Occupational Safety and Health Act, i. e., the elimination of hazardous employment conditions through the establishment of uniform national health and safety standards. Another primary purpose of the rule is to enlist the aid of employees and their representatives in the search for and identification of hazardous conditions.

As mentioned earlier an occupational safety and health standard is defined in Section 3(8) of the Act. This definitional provision employs the word "standard" as part of its definition of an occupational safety and health standard. The meaning given to "standard" as used in the definition should therefore be that which enables the word to serve the definitional purpose of the provision. In interpreting the language used in a statute the common sense meaning of words should govern unless the statute or its legislative history suggests that a different technical meaning should be given to the language used. *Addison v. Holly Hill Co.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). A definitional provision in a statute is the vehicle by which a word used in the statute may be assigned a technical meaning different from that commonly given the word. A word used in the definitional provision must be given its common sense meaning so that the technical meaning of the word being defined may be clearly understood. As commonly understood a "standard" provides a means of determining what a thing should be. It is a measure against which a thing may be compared to make an immediate determination of whether the thing conforms to established criteria. As used in the definition of an occupational safety and health standard, the word "standard" most rationally denotes a similar meaning with respect to those components of the work environment which affect employee safety. Thus it may be concluded that Congress intended an occupational safety and health standard to establish a measure against which the conditions existing or the practices, means, methods, operations, or processes used in a given work place may be compared for an immediate determination of whether the work place is safe.

An occupational safety and health standard must also address particular hazards existing in a work environment. Before a work place may be made safe by compliance with a standard, there must be a hazard which is reduced through conforming the conditions existing or the practices, means, methods, operations or processes used in the work place to those prescribed by the standard. That Congress intended the identification of hazards as a preliminary step in the standard promulgation process is reflected in both the legislative history and various sections of the Occupational Safety and Health Act. The legislative history of Section 6(b) states that "[S]tandards promulgated under this procedure would include requirements [concerning] the use of labels or other forms of warning to alert

---

**8.** The right of access varies dependent upon whether access is being sought to an "employee exposure record" 1910.20(c)(5) or "employee medical records" 1910.20(c)(6). With respect to "employee exposure records," an "employee" 1910.20(c)(4) and "designated employee representative" 1910.20(c)(3), are given access rights by 1910.20(e)(2)(i). With regard to employee medical records only the employee who is the subject of the record and a designated representative to whom that employee has given "specific written consent" 1910.20(c)(10) are given rights of access to the records by 1910.20(e)(2)(iii). Under 1910.20(e)(3) OSHA representatives have a right to immediate access to either kind of record regardless of whether the employee has consented.

employees to the *hazards covered by the standard.*" U.S.Code Cong. & Admin.News, p. 5183 (1970) (emphasis added). Sections 6(b)(6)(A) and 6(b)(5) of the OSH Act also speak in terms of hazards either dealt with or covered by a standard.

Judicial recognition of the apparent Congressional intent to have standards address hazards may be found in *Industrial Union Dept., A.F.L.–C.I.O. v. American Petroleum Institute,* —— U.S. ——, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980). In that case a plurality of the court agreed that with regard to toxic substances "3(8) requires the Secretary [of Labor] to find as a threshold matter that the toxic substance in question poses a significant health risk in the workplace and that a new, lower standard is therefore 'reasonably necessary or appropriate to provide safe or healthful employment or places of employment.'" —— U.S. at ——, 100 S.Ct. at 2850. This conclusion was in part based on the court's interpretation of section 6(g). —— U.S. at ——, 100 S.Ct. at 2847. That section requires the Secretary of Labor to establish priorities for the promulgation of standards so that the more serious hazards are addressed first. The establishment of priorities necessarily requires both the identification and comparison of hazards existing in various work environments so that standards covering those hazards posing the greatest risks may be established first.

■ From this discussion the court has concluded that Congress intended an occupational safety and health standard to possess two qualities: (1) it must address a particular hazard existing in a work environment; and (2) it must establish a measure against which the condition existing or the practices, means, methods, operations or processes used in a work place may be compared for an immediate determination of whether the work place is safe with respect to the hazard addressed by the standard.

■ In so identifying two essential qualities of a standard, the court rejects the definition urged by the plaintiffs.[9] Plaintiffs argue that a standard must regulate the physical environment of the workplace. It is plaintiffs' contention that the rule in issue may not be deemed a standard because it concerns only preservation and access to medical records and thus has no effect on the actual physical environment of the workplace. The court however feels that the word "practices" as used in 3(8) can reasonably be read to reflect a desire on Congress' part to extend to OSHA authority to promulgate standards requiring employer adherence to certain administrative procedures designed to reduce an identified occupational hazard posed by procedures different from those prescribed. For example, if it was the practice of an employer to use potentially lethal substances in a particular manufacturing process without informing an employee of the dangers to which he was exposed, the practice would pose an occupational hazard which could be reduced through adherence to a standard requiring that employees be informed of the risk. Such a standard would prescribe a different practice from that existing at the work place and thus be within the definition of 3(8) even though it did not regulate the physical environment of the workplace.

Having rejected the interpretation of a standard urged by the plaintiffs, it remains to be determined whether or not the rule in issue is an occupational health and safety standard within the interpretation of that term which this court has gleaned from the Occupational Safety and Health Act. In so deciding the character of the rule the court must bear in mind the congressional purpose underlying the review provision of 6(f).

Through Section 6(f) Congress provided that judicial review of standards be availa-

---

**9.** OSHA argued that the rule in question is a standard because it is: (1) nationally applicable, (2) prescribes practices necessary for healthful employment, (3) is closely related to substance–specific standards, and (4) was declared by the Secretary of Labor to be promulgated under the authority of Section 6(b) of the OSH Act. While not finding these arguments particularly helpful in deciding what a standard is, the court feels that to the extent they are relevant to the jurisdictional issue presented, they are not so inconsistent with the court's conclusion that extensive comment is warranted.

ble only in the Courts of Appeal. U.S.Code Cong. & Admin.News 5184 (1970). It may be assumed that by requiring judicial review of standards to be sought only in the Courts of Appeal, Congress hoped that judicial expertise in occupational safety and health would be focused in those courts. *See* Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals; 88 Harv.L.Rev. 980, 983 (1975). In so directing litigation to specific courts Congress no doubt also intended to reduce the number of potentially conflicting rulings which might otherwise impair the activities of an agency having national responsibilities. *See Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C.Cir. 1975). A bifurcation of judicial review of identical agency action between the district courts and the Courts of Appeal would frustrate these congressional policies. *Foti v. I. & N. S.*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

■ In a case such as the one here presented, where the considerations just discussed are so obviously involved, the court believes that they should weigh heavily against a litigant challenging an administrative action which may be reasonably characterized as possessing the qualities of an action reviewable only in another forum. With regard to the case at hand, the court feels that the rule may be reasonably characterized as possessing the qualities of a standard.

Insofar as whether the rule addresses a hazard, counsel for OSHA claimed at the hearing on plaintiffs' motion that the denial of access to employee medical records poses an occupational hazard. This conclusion is reflected in the preamble to the rule. *See*, 45 Fed.Reg. 35213–14. Whether or not such a denial actually does pose a hazard is not for this court to decide. For purposes of determining whether the court has jurisdiction it is necessary only to find that the rule was formulated with what could reasonably

be considered a hazard in mind. The importance of medical records to the maintenance of good health can not be denied. To find that the denial of access to medical records poses somewhat of a hazard is therefore not unreasonable. The question of whether denial of access to the records covered by 1910.20 is actually a hazard is for the Courts of Appeal to decide.[10] We simply find that for jurisdictional purposes the rule addresses a hazard and thus possesses one of the two essential qualities of a standard.

With regard to whether the rule establishes a measure against which the conditions existing or the practices, means, methods, operations or processes used in a work place may be compared for an immediate determination of whether the work place is safe with respect to an identified occupational hazard, the court finds that it does. OSHA contends that the rule prescribes a practice designed to reduce the risk presented by a denial of access to employee medical records. We find that the denial of access to medical records may fairly be considered a practice. The rule in question addresses the hazard posed by a denial of access and prescribes an alternative practice designed to reduce it.

We therefore hold that 1910.20 is an occupational safety and health standard as defined by 3(8) and that jurisdiction over this suit properly lies in the Courts of Appeal pursuant to Section 6(f) of the OSH Act. Plaintiffs' suits are hereby dismissed at their cost.

---

10. Under 6(f), a challenge against a standard will be sustained unless the determination upon which the standard was based are supported by substantial evidence on the record. The determination that a practice poses a significant risk of injury would presumably be a matter reviewable by the Courts of Appeal. *See, Industrial Union Dept., A.F.L.-C.I.O. v. American Petroleum Institute*, —— U.S. ——, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980).